WARREN HEATON, Respondent, v. KANSAS CITY, PITTSBURG & GULF RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 10, 1896.

Negligence: BOARDING RAILROAD TRAIN WHILE IN MOTION. The plaintiff was injured in attempting to board a steam railroad train while it was passing a station on a descending grade, and traveling at a rate of speed variously estimated but by no one at less than between six and seven miles an hour. He had been informed that it would not stop, and was told by the conductor to jump on. He was young and vigorous, and had been a constant traveler on railroads; yet, acting on the impulse of the moment, he sprang on the train in opposition to, and not with, the direction in which it was moving. *Held*, that he was, as a matter of law, guilty of contributory negligence.

*Appeal from the Newton Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED.

*Trimble & Braley* and *Benton & Sturgis* for appellant.

The court erred in overruling defendant's demurrer to the plaintiff's evidence, and in refusing to give to the jury at close of all the evidence the peremptory instruction designated as number 1 of its instructions.

The plaintiff's testimony conclusively showed that, if there was negligence on the part of the defendant or its servants, the plaintiff was also guilty of negligence not only contributing directly to produce the injury complained of, but negligence which was the sole cause of the injury. *Murphy v. Railroad,* 43 Mo. App. 342; *Nelson v. Railroad,* 68 Mo. 593, 596; *McMurtry v. Railroad,* 67 Miss.; *Railroad v. Bangs,* 47 Mich. 470; *Hunter v. Railroad,* 126 N. Y. 18; *Same v. Same,* 112 N. Y. 371; *Myers v. Railroad,* 82 Hun. 36; *Fahr v. Railroad,* 9 N. Y. Misc. 57; *Harvey v. Railroad,* 116 Mass. 269; *Railroad v. Koehler,* 47 Ill. App. 147; *Whitlock v. Comer,* 57 Fed. Rep. 565; *McLaren v. Railroad,* 100 Ala. 506; *Distler v. Railroad,* 78 Hun. 252; *Phillips v. Railroad,* 49 N. Y. 177; *Railroad v. Jones,* 95 U. S. 439; *Solomon v. Railroad,* 103 N. Y. 437; *Railroad v. Aspell,* 23 Pa. St. 147; *Railroad v. Morris,* 31 Gratt. 200; *Gavett v. Railroad,* 16 Gray, 501; *Railroad v. Mayes,* 24 S. W. Rep. 1076.

*Joseph Cravens* for respondent.

It is the established and prevailing rule of law, that if a passenger gets on or off of a moving train by command or direction of an employee, and especially one in charge and control, then it is not negligence *per se,* but the question goes to the jury under proper instructions from the court. *Railroad v. Dorough,* 10 S. W. Rep. 711; *Wyatt v. Railroad,* 55 Mo. 485; *Railroad v. Wilson,* 71 Ga. 22; *Filer v. Railroad,* 49 N. Y. 47; *Railroad v. McCurdy,* 45 Ga. 288; *McIntire v. Railroad,* 37 N. Y. 287; *Leslie v. Railroad,* 88 Mo. 51; *Swigert v. Railroad,* 75 Mo. 475; *Morrissey v. Higgins Ferry Co.,* 47 Mo. 521; *Railroad v. Davidson,* 4 S. W. Rep. 636; *Fulks v. Railroad,* 111 Mo. 335; *Railroad v. Carper,* 13 N. E. Rep. 122; *Railroad v. Person,* 4 S. W.

Rep. 755; *Irish v. Railroad*, 29 Pac. Rep. 845; *Railroad v. Spahr*, 33 N. E. Rep. 446; *Railroad v. Fox*, 6 S. W. Rep. 569; *Railroad v. Kane*, 13 Atl. Rep. 387; *Schacherl v. Railroad*, 43 N. W. Rep. 837; *McSwyney v. Railroad*, 7 N. Y. S. 456; *Sahlgaard v. Railroad*, 51 N. W. Rep. 111; *Lent v. Railroad*, 120 N. Y. 467; *Railroad v. Randolph*, 53 Ill. 510; *Bucher v. Railroad*, 98 N. Y. 128; *Strand v. Railroad*, 28 Am. & Eng. R. R. Cases, 213. The courts have always made a distinction between cases where parties voluntarily got on or off moving trains, and where they are ordered or directed to get on or off by an employee. If the act is done voluntarily, the courts hold, when such act has the appearance of recklessness, it is negligence *per se;* but when it is done by order or direction of an employee, then the question of negligence must be submitted to the jury under proper instructions. This distinction clearly appears in some of the cases cited above, and also the following: *Penn. Co. v. Marien*, 7 L. R. A. 687; *Railroad v. Stacker*, 86 Tenn. 343; *Walker v. Railroad*, 7 L. R, A. 111; *Railroad v. Coulbourn*, 1 L. R. A. 541; *Railroad v. Kelley*, 36 Kan. 665; *Railroad v. Singleton*, 66 Ga. 252; 62 Ga. 306; *Benton v. Railroad*, 55 Iowa, 496; *Brill v. Eddy*, 115 Mo. 596; *Railroad v. Stewart*, 91 Ala. 421; *Railroad v. Pickard*, 8 Col. 163; *Curry v. Railroad*, 17 Ont. Rep. 65; *DeKay v. Railroad*, 4 L. R. A. 632; Patterson's Railway Accident Law, sec. 275, page 286; Whittaker's Smith on Negligence, page 302. The distinction as to the liability of the railroad company for injury to one who boards a moving train upon the advice or direction of the train men, and its nonliability where the act is done voluntarily by the person, uninfluenced by any command of the agents of the railroad, is clearly pointed out in *Railroad v. Railroad*, 36 Fed. Rep. 879; *Railroad v. Railroad*, 34 Fed. Rep. 92.

Bond, J.—The plaintiff sues for injuries sustained in boarding a moving train on July 2, 1894, at a station called Saginaw, between Joplin and Neosho, Missouri. He alleges that the conductor negligently commanded him to "jump on," and that relying on the judgment of the conductor, he obeyed and was thus injured. The answer is a general denial and a plea of contributory negligence. A verdict and judgment for $2,500 was rendered for plaintiff, from which defendant appeals.

The first error assigned is the refusal of the court to sustain defendant's demurrer to the evidence. This involves a review of the evidence adduced by plaintiff only, since it was not aided by that given for defendant. Plaintiff's account of the accident in his examination in chief is as follows:

"*Q.* When you came to Saginaw, describe to the jury how that track runs and what direction? *A.* North and south. When I got there, the freight train was on the right track; the passenger side tracked until the freight train started, pulled out and left the platform clear. I saw Mr. Austin and Jim Wills standing there. I said to Ollie Cravens: 'Let's go over there, I want to see Austin.' He said: 'I don't know whether we will have time.' I walked down to front end of the passenger car, and asked if we would have time to step over here a few minutes. I motioned to Ollie to come, and I was busy engaged in talking to Austin. The freight cleared the track, and the passenger backed and I expected it to stop. The engine passed me and baggage car; did not think but what it would stop. About that time the conductor was standing between the smoker and baggage car. He said: 'You fellows jump on.' He said some other word before that. I obeyed him under impulse. If I had known, I could have waited and got on and not got hurt perhaps. It was

coming toward me when I grabbed hold of the car; it was coming from the north. The handhold of the car struck me right there, that is the only way I can explain.

"*Q.* What was you doing when it struck you? *A.* Getting on."

On cross-examination plaintiff testified to wit:

"*Q.* Which hand did you take hold of the railing with? *A.* I think the bottom part with my right hand, and I bumped right up against it. The car was running south, and I was going north.

"*Q.* You did not jump with the train? *A.* No.

"*Q.* You did not jump against the car? *A.* Yes, sir.

"*Q.* And, as you think, grabbed hold of the railing to the body of the car with both hands? *A.* Yes, sir."

Ollie Cravens, who left the passenger car while it was standing on the side track with plaintiff, testified as follows: "I saw the passenger train back up and start on south on main track. I was watching, seeing what was being done. It pulled on down toward the platform; I had no idea until I saw the conductor on the platform, had no idea but what the passenger train would stop there. The conductor saw us three standing there and he kind of stuck his head out a little before we got there and said: 'Jump on, this train won't stop.' At that Jim Wills jumped on rear platform of smoker, Heaton on front platform of ladies' coach. The train seemed to start up a little fast about that time. I had to wait for the rear platform of ladies' coach."

Plaintiff estimated the speed of the train while passing the platform to be from six and one fourth to seven and one fourth miles per hour. Other witnesses in his behalf gave the following estimates: Baker,

five to ten miles per hour; Austin, ten to fifteen miles per hour; Cravens, five to seven miles per hour; Wills, seven to eight miles per hour. Defendant's witnesses estimated the train was going at a greater rate of speed.

The rule governing cases like the present is thus expressed by the supreme court: "To attempt to get on or off a train in rapid motion would be an act of gross negligence; but it is generally held that the courts will not, as a matter of law, declare a person guilty of contributory negligence who attempts to get on or off a train while it is moving slowly, especially at a platform. The question of contributory negligence in such cases is one of mixed law and fact, and should be determined by the jury, under the guide of proper instructions, in the light of all the attending circumstances." *Fulks v. Railroad*, 111 Mo. *loc. cit.* 340. In applying the above rule the supreme court decided that a husband could not recover for injuries to his wife, sustained by alighting from a train moving at the rate of four to fifteen miles per hour, whose speed slackened until it was fully stopped at a car length from the point where she jumped off, and where it further appeared she was warned not to get off. *Nelson v. Railroad*, 68 Mo. 593. It has been said also that it would be negligence *per se* for a person to board a train moving at the rate of eight miles per hour. *Murphy v. Railroad*, 43 Mo. App. 342. In New York, upon a second appeal, it has been held that a plaintiff, who got on a train of cars moving at the rate of one to two miles per hour at the command of the conductor to "jump on," could not recover for injuries sustained thereby. It was further held that such a remark of the conductor only amounted to a statement that the train would not stop. *Hunter v. Railroad*, 126 N. Y. 18.

For want of any rule fixing the limit of speed of a

train comprehended in the terms "while it is moving slowly," we must hold that the only solution of the question depends upon whether a prudent person similarly situated would have boarded a train moving at the given rate of speed. If the undisputed facts and circumstances attending the transaction admit *only* of an inference of contributory negligence, the court should take the case from the jury (*Nelson v. Railroad, supra*); otherwise, the issues should be submitted. *Doss v. Railroad,* 59 Mo. 27; *Straus v. Railroad,* 75 Mo. 190. This rule is founded on the principle, that it is the province of the court in the first instance to determine whether there is any evidence tending to prove or disprove a controverted fact. If this be decided in the affirmative, it is then the province of the jury to say whether the evidence in question does prove the fact in issue. If, therefore, all the evidence given on behalf of plaintiff raises a necessary presumption of negligence on his part directly contributing to the injury sued for, it was the duty of the trial court to direct a verdict for the defendant; for, if such was the legal effect of plaintiff's evidence, he thereby disproved the allegation of negligence charged in his petition against defendant.

Defendant's train of cars, after backing on the main track from the switch, started toward the platform at the station, not for the purpose of stopping there but of continuing its journey. It was undisputed that there was a descending grade at this point, and plaintiff testifies that the train was passing the point where he stood on the platform at the rate of six and one fourth to seven and one fourth miles per hour. It is further shown that plaintiff was a man of vigor and youth, and a constant traveler upon railroads. His own testimony shows that he sprang upon the approaching train by leaping toward, not with, its motion. He

collided with the railing attached to the body of the
ladies' coach. He admits in his testimony that the act
in question was done upon "impulse," and that he
might with safety have boarded the train by leaping
concurrently with its motion—in other words, that,
with his experience of travel, he might have mounted
the train in safety by another method than the one
which he says was adopted upon "impulse." His only
excuse for his act is that it was an impulsive one in
accordance with the suggestion of the conductor to
"jump on."

It is well settled that an act done upon the impulse
of the moment upon a reasonable apprehension of
impending danger will excuse conduct otherwise negli-
gent in the actor; and the same is true of an act done
in obedience to the command of a lawful superior, or
in reliance upon his judgment. Neither of those feat-
ures existed in the present case. The plaintiff was in
a position of absolute safety on the platform. He knew
the train approaching the platform would not stop
there, because not only was such notice conveyed to
him by the remark of the conductor to "jump on"
(*Hunter v. Railroad*, 126 N. Y. *supra*), but his own
witness and attorney, who was standing at his side,
states that the conductor warned them that the train
would not stop. Under these circumstances it is
impossible to avoid the conclusion that the voluntary
act of the plaintiff in boarding the train, as described
in his own testimony, while it was traveling at an
increasing rate of speed and had already reached a
speed of six and one fourth to seven and one fourth
miles per hour, was pure recklessness, depriving him
of any right of recovery in this action. In accordance
with the view herein expressed it is aptly said by the
court of appeals of New York: "To alight from, or
to board a train in motion, is a negligent and hazardous

act, which can only be made to appear excusable when, in the situation of the person, he is under such a coercion of circumstances as to raise a fair question as to whether he was really in the free possession and use of his faculties and judgment." *Hunter v. Railroad*, 126 N. Y. 1, 2, 23, and 24. It is also said by that court that "the conclusion, that it is *prima facie* dangerous to alight from a moving train, is founded on our general knowledge and common experience." *Solomon, Adm'x, v. Manhattan Railroad*, 103 N. Y. 437–443.

As there is not in the evidence given by plaintiff, or that of his witnesses, a single fact from which a logical inference could be drawn negativing the recklessness of the conduct of plaintiff in boarding the train of defendant, there was nothing issuable to submit to the jury, and the court should have directed a verdict for defendant.

The judgment in this case is reversed. All the judges concur.